UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA MANCINI, | : | |
| Plaintiff, | : | Civil Action No. 04-3764 (WJM) |
| v. | : | OPINION |
| JO ANN B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY, | : | HON. WILLIAM J. MARTINI |
| Defendant. | : | |

Robert J. Ryan
663 Bound Brook Road
Middlesex, NJ 08846
    *(Attorney for Plaintiff)*

Sandra M. Grossfeld
Office of the United States Attorney
Social Security Administration
26 Federal Plaza
Room 3904
New York, NY
    *(Attorneys for Defendant)*

**MARTINI, District Judge:**

**I.    INTRODUCTION**

    Plaintiff Linda Mancini ("Mancini") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C § 405(g), and § 1383(c)(3), to review the final determination by the Commissioner of Social Security ("Commissioner") which denied Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") Benefits.  The Administrative Law Judge ("ALJ"), Dennis O'Leary, issued a written decision on July 21, 2003, finding that Plaintiff was not entitled to DIB or SSI as set forth in §§ 216(I), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, as amended.  On appeal, Plaintiff contends that the ALJ's decision to deny benefits was not supported by "substantial evidence."

II.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a divorced woman in her late-40s with custody of her two teenage children. She has a high school degree and worked as a pharmacy technician and teacher's assistant when she was involved in a car accident on October 7, 2000.  As a result of the car accident, she suffered injuries, primarily to her back and neck.  Plaintiff returned to work shortly thereafter, but ceased working on or around March 2001 because, according to Plaintiff, she could not tolerate the pain.  She has not returned to work since.

Since the accident, Plaintiff has sought treatment from a number of different physicians who have diagnosed Plaintiff with, among others, disk herniation in her neck, bilateral carpal tunnel syndrome, and disk degeneration in her back.  Plaintiff has also sought treatment from a physical therapist, a chiropractor, and an acupuncturist.  Although Plaintiff has never undergone surgery for her condition, she has received several epidural injections to help relieve her pain, and she takes prescription and over-the-counter analgesics for that same purpose.

Plaintiff filed her application for DIB and SSI on September 12, 2001, in which she alleged she was unable to work due to injuries suffered during a car accident.  Her application was denied initially and upon reconsideration by the Social Security Administration.  Plaintiff

then made a timely request for a hearing, which was held by the ALJ on March 20, 2003. At the conclusion of the hearing, based on Plaintiff's complaints of depression, the ALJ ordered a psychiatric examination. The examination was performed on May 13, 2003 by Dr. Yara, a psychiatrist employed by the New Jersey Department of Labor, Division of Disability Determination Services.

The ALJ reviewed the case *de novo* and found that, despite her injuries, Plaintiff retained the capacity to perform "a full range of sedentary work," and that the psychiatric examination revealed "no severe mental impairment." (R. at 19.) He issued a decision on July 21, 2003 finding Plaintiff not entitled to DIB or SSI. Plaintiff subsequently requested a review of the ALJ decision by the Appeals Council, which denied her application on June 25, 2004. On August 6, 2004, Plaintiff filed this civil action.

### III.   STANDARD OF REVIEW

An individual may be entitled to DIB or SSI upon a finding of "disability" as defined by the Social Security Act. The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(3)(A). *See also* 20 C.F.R. § 404.1505(a).

The applicable standards for disability evaluation under § 423 are enumerated in 20 C.F.R. § 404.1520, which provides that a person is considered disabled only if his or her physical or mental impairment(s) are of such severity that he or she is not only unable to do his or her

3

previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Commissioner of Social Security uses a five-step sequential process to evaluate whether a claimant is disabled. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a); *Burnett v. Commissioner of Soc. Sec. Admin.,* 220 F.3d 112, 118 (3d Cir. 2000). If a claimant is found to be engaged in substantial gainful activity, the disability claim will be denied. *Burnett*, 220 F.3d at 118; *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe medical impairment. 20 C.F.R. § 404.1520(c); *Burnett,* 220 F.3d at 118. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. 20 C.F.R. § 404.1520(c); *Burnett,* 220 F.3d at 118. However, if the claimant demonstrates a severe medical impairment, the Commissioner determines in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability. 20 C.F.R. § 404.1520(d); *Bowen*, 482 U.S. at 141. If the claimant's severe medical impairment satisfies the step three analysis, the Commissioner will find the claimant disabled without considering other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(d). On the other hand, if a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Burnett,* 220 F.3d at 118.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Burnett,* 220 F.3d at

118.  The claimant bears the burden of demonstrating an inability to return to his or her past relevant work.  *Burnett,* 220 F.3d at 118 (quoting *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir. 1994)).  If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy, taking into consideration the claimant's age, education, and past work experience, in order to deny a claim of disability.  *Burnett,* 220 F.3d at 118; 20 C.F.R. §§ 404.1520(f), (g).  If the claimant cannot perform other available work in the national economy, then the Commissioner must grant disability benefits to the claimant.

When reviewing the Commissioner's denial of disability benefits, the District Court is limited to a determination of whether the denial is supported by "substantial evidence."  *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'"  *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla, but may be less than a preponderance").  Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.

IV.     DISCUSSION

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since the date of the accident.  (R. at 16.)  He then found that Plaintiff "has severe impairments referable to a herniated cervical disk and radiculitis" but that the evidence did not warrant a finding of severe depression or carpal tunnel syndrome.  (R. at 18.)  The ALJ acknowledged that Plaintiff received a "nominal" Global Assessment of Functioning (GAF) rating of 40-45;[1] yet he discounted that finding as inconsistent with Yara's conclusion that Plaintiff's "ability to understand, remember and carry out instructions was not affected by her mental impairment."  (*Id*.)  The ALJ also acknowledged Yara's finding that Plaintiff has "marked" impairment in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.  (*Id*.)  However, he disregarded these findings as "based solely upon the claimant's pain-related contentions."[2]  (*Id*.)  In the end, the ALJ concluded that Plaintiff "retained the residual functional capacity to perform essentially a full range of sedentary work at all times pertinent."  (R. at 19.)

Plaintiff now seeks to have this Court reverse the denial of her application, arguing that the ALJ did not base his decision on "substantial evidence."  She specifically argues that the ALJ impermissibly substituted his own medical judgment for that of the examining psychiatrist to find that Plaintiff does not suffer from a severe mental impairment.  Because Plaintiff only contends she is entitled to a finding of severe *mental* impairment, this Court limits its review to

---

[1] A GAF score within this range indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000).

[2] The HA-1152 form that Yara filled out defines "marked" impairment as a "serious limitation" where the "ability to function is severely limited but not precluded."  (R. at 243.)

Plaintiff's argument that the severity of her mental impairments "erode[s] the unskilled sedentary occupational base" so as to "justify a finding of disability." (*See* Pl.'s Br. at 6.)

In support of this argument, Plaintiff relies on Social Security Ruling 96-9P ("SSR 96-9P"), which provides guidance for determining whether a claimant who is otherwise relegated to unskilled sedentary jobs is still capable of performing a wide enough of a range of work so that she cannot be considered disabled. This Ruling applies in the instant case because the ALJ indeed determined that Plaintiff's physical impairments confine her to sedentary work, and that she was limited to unskilled occupations. (R. at 21.) This Court must then decide whether there was substantial evidence to justify the ALJ's conclusion that Plaintiff could perform a "full range" of unskilled sedentary work even upon consideration her claimed mental impairments.

SSR 96-9P states that, with regard to mental impairments, a "substantial loss of ability to meet any one of several basic work-related activities on a sustained basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-9 at 9. Two of the four enumerated work activities listed are "responding appropriately to supervision, co-workers, and usual work situations" and "dealing with changes in a routine work setting." *Id*. Pointing to this language and to Yara's finding of "marked" impairment in Plaintiff's ability to (1) respond appropriately to work pressures in a usual work setting and (2) respond appropriately to changes in a routine work setting, Plaintiff argues that the ALJ could not have decided against her unless he had impermissibly substituted his own judgment for that of Yara's. Plaintiff additionally argues that the ALJ erred in discounting the implications of Plaintiff's 40-45 GAF rating, a score which by its definition indicates that Plaintiff suffers from

7

serious impairment in social and/or occupational functioning. *See supra* note 1. This Court agrees in part, and for that reason, reverses and remands for further proceedings.

The difficulty in this case, and undoubtedly what the ALJ struggled to reconcile, stems from the total lack of evidence to support Yara's findings and, thereby, Plaintiff's claim of mental impairment. The record contains virtually no evidence, with the exception of Plaintiff's testimony and Yara's report, of Plaintiff's alleged depression. In her initial DIB and SSI application, Plaintiff complained only of physical pain in her head, neck, back, and shoulders. (R. at 85.) Plaintiff has never sought treatment from a mental health professional following the car accident, nor has she ever taken psychotropic medications to deal with her alleged mental illness. Likewise, medical evaluations by Plaintiff's treating physicians contain no indication that Plaintiff ever complained of depression. In fact, it appears from the record that Plaintiff first claimed she was depressed during the March 20, 2003 hearing before the ALJ.

With regard to Yara's medical evaluation, the record shows that Yara checked off boxes for "marked impairment" when asked whether Plaintiff could "respond appropriately to work pressures in a usual work setting," or "respond appropriately to changes in a routine work setting." (R at 244.) However, when asked to delineate the bases for this assessment, Yara simply wrote, "Cognitively, she sounds fine but reports that she cannot work and she cannot stand or sit for long." (*Id*.) Based on this statement, the ALJ determined that Yara's findings of marked impairment were "based solely upon the claimant's pain-related contentions" and therefore unreliable insofar as they were contradicted by other objective evidence in the record. (R. at 18.) Indeed, with the evidentiary record so lacking in evidence to support Plaintiff's claim of mental impairment, any reasonable fact-finder would similarly be inclined to discount it.

Compounding these problems is Yara's report itself, namely Yara's failure to present a sufficiently "competent" medical evaluation. Despite this Court's perusal of the documentation, it could find little indication of how Yara determined the nature and degree of Plaintiff's impairment. Yara provides virtually no discernible bases, other than Plaintiff's subjective statements, for rendering his opinion. There is little evidence in the record of what, if any, objective psychiatric testing Yara performed and what objective criteria underlie his diagnosis.

Nonetheless, this Court believes that the ALJ erred in its treatment of Yara's report. In evaluating claims of medical disability, "[m]edical evaluations by treating physicians are entitled to significant weight, particularly if they are uncontradicted by other expert medical testimony." *Edge v. Schweiker*, 814 F.2d 125, 129 (3d Cir. 1987). An ALJ "is not free to set his own expertise against that of physicians who present competent medical evidence." *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). The record contains no contradictory medical opinion to refute Yara's assessment that Plaintiff suffers from mental impairment. Additionally, Yara found mental and functional impairments significant enough so that, when coupled with Plaintiff's physical ailments, they could have entitled Plaintiff to the requested benefits. This Court also notes that Yara works for the New Jersey Department of Labor in the Disability Determination Division. He would undoubtedly understand the impact of his assessment with respect to the ALJ's decision. For these reasons, this Court believes the ALJ, who in fact ordered the examination, should have given greater weight to Yara's report and better attempted to clarify the inconsistencies in the record.

As such, and based on the conflicting record developed below, this Court finds that the ALJ erred in its treatment of Yara's psychiatric evaluation but that Yara's report alone is too

scant to be determinative of whether Plaintiff is entitled to a finding of disability.  This Court thus reverses and remands so that the Commissioner may make further findings as to whether Plaintiff suffers from those impairments found by Yara and whether those impairments warrant a finding of disability.

## V.     CONCLUSION

The decision of the Commissioner is reversed.  This case is remanded for further proceedings consistent with this Opinion.  An accompanying Order is attached.

s/ William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**

| | |
|---|---|
| Original: | Clerk of the Court |
| Cc: | File |
| | All Parties |